IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| YVONNE FLITTON,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>PRIMARY RESIDENTIAL MORTGAGE, INC.,<br><br>    Defendant and Counterclaimant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S RULE 50 MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT<br><br><br>Case No. 2:03-CV-481 TS |

This matter is before the Court on Defendant's Rule 50 Motion for Judgment Notwithstanding the Verdict, filed November 23, 2005 (Docket No. 199). Plaintiff filed her response on December 16, 2005 (Docket No. 207), and Defendant's reply was filed December 28, 2005 (Docket No. 209).[1] Defendant's Rule 50 Motion came before the Court for oral argument on January 13, 2006. Oral argument was heard of both counsel and at the conclusion

---

[1] On January 12, 2006, Plaintiff made a Motion to Strike Defendant's Reply Memorandum in Support of its Rule 50 Motion for Judgment Notwithstanding the Verdict (Docket No. 211), which the Court denied that same day (Docket No. 212).

of the hearing, the Court took the matter under advisement. The Court, having fully read the parties' briefs, heard oral argument, and being otherwise fully informed, will grant the Motion for the reasons set forth below.

I. BACKGROUND

This case came before the Court for a jury trial, held October 31, 2005, through November 4, 2005. At the close of Plaintiff's case-in-chief, Defendant made a Rule 50 Motion for Judgment as a Matter of Law, which the Court granted, in part, and denied, in part (Docket No. 180). In its November 4, 2005 Order, the Court entered judgment against Plaintiff on her gender discrimination claim and on the issue of punitive damages, but allowed the remaining claim of retaliation to go to the jury. Defendant then presented its case, at the close of which Plaintiff made an oral Rule 50 Motion. The Court granted Plaintiff's Motion on every issue in Defendant's counterclaim except the issue of the breach of contract with respect to the computer. Defendant then orally renewed its Rule 50 Motion with respect to Plaintiff's retaliation claim. The Court denied the Motion, closing arguments were given, and the case went to the jury. The jury returned a verdict, finding in favor of Plaintiff on her retaliation claim, and in favor of Defendant on its breach of contract claim against Plaintiff. Thereafter, Defendant filed the instant Motion.

II. STANDARD OF REVIEW

As the Court noted in its November 4, 2005 Order, pursuant to Fed. R. Civ. P. Rule 50(a), after "a party has been fully heard on an issue and there is *no legally sufficient evidentiary basis*

*for a reasonable jury to find for that party on that issue*, the court may determine the issue against the party and may grant a motion for judgment as a matter of law against that party . . . ."[2]

The United States Supreme Court has set forth the applicable standard in *Reeves v. Sanderson Plumbing Prod., Inc.*,:

> [I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.[3]

The Tenth Circuit has further clarified that judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[4]

The Court acknowledges that Fed. R. Civ. P. Rule 50 presents a high standard. However, Rule 50 is a tool available to a judge to use when he or she believes the evidence was

---

[2] Fed. R. Civ. P. 50(a) (emphasis added).

[3] 530 U.S. 133, 135 (2000) (internal citations and quotation marks omitted).

[4] *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996).

3

insufficient, as a matter of law, to support the jury verdict, using the standard that the "evidence points but one way."[5]

During the course of trial, the Court carefully observed each witness and examined the admitted evidence. The Court is also familiar with and has considered "all of the evidence in the record" as it relates to the instant Motion.[6] However, at the time it issued its November 4, 2005 Order, at the close of Plaintiff's case-in-chief, the record had not yet been clarified as to the timing of the e-mails at issue with regard to the decision to terminate Plaintiff. Upon significant reflection after trial, and with the advantage of a chance to carefully review the evidence that the jury had before it, the Court finds that it must correct its previous Rule 50 ruling.[7] The Court finds that, as a matter of law, the evidence before the jury points but one way – against Plaintiff – and a reasonable jury could not have found that Plaintiff met her burden of proving, by a preponderance of the evidence, the elements of a retaliation claim against Defendant. As such, there was no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue of retaliation.[8]

Based thereon, and drawing all reasonable inferences in favor of the Plaintiff as the nonmoving party, the Court will grant Defendant's Rule 50 Motion for Judgment

---

[5] *Id.*

[6] *See Reeves*, 530 U.S. at 135.

[7] In its November 4, 2005 Order, the Court found "that Plaintiff's good-faith belief that discrimination was occurring, combined with the e-mail she sent to Mr. Zitting, are legally sufficient for a jury to consider."

[8] *See* Fed. R. Civ. P. 50.

Notwithstanding the Verdict.  In making this determination, the Court did not make any credibility determinations, did not weigh the evidence, nor did it draw inferences from the evidence.

III.   DISCUSSION

    A.   Marshaling the evidence.

The Court is disappointed in Plaintiff's nearly complete failure to cite any trial evidence before the Court, and her failure to accurately recount the testimony presented at trial.  In support of its Motion, Defendant argues that Plaintiff has failed to properly "marshal the evidence" or to even refer to trial testimony and that, "[o]n this basis alone," its Motion should be granted.[9] Defendant directs the Court to Tenth Circuit cases holding, essentially, that it is not the duty of the Court to "sift through" the record and make a party's case for them.[10]  Although the Court is troubled by Plaintiff's meager effort, it does not base its decision herein on the paucity of Plaintiff's response to the Motion but, rather, this ruling is made squarely on the evidence before the jury, viewed in light of the legal standards set forth above.

    B.   Plaintiff's retaliation claim.

As noted in the Court's November 4, 2005 Order, the elements required in order to establish a claim for retaliation are that: 1) Plaintiff complained that she suffered discrimination, 2) contemporaneous with or subsequent to her engaging in protected opposition to

---

[9] Defendant's Reply at ii-iii, 8.

[10] *See Trimble v. Silvern*, 62 Fed.Appx. 239, 242 (10th Cir. 2003); *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992).

discrimination, Defendant took adverse action against her, and 3) there is a causal connection between her engaging in protected opposition to discrimination and any adverse action taken against her.[11]

Plaintiff's retaliation case is based on a conversation in July or August of 2002 between Plaintiff and Zitting, combined with two e-mails she sent to Zitting and Chapman on October 10, 2002, for her assertion that she complained of discrimination to her superior, Zitting, who is Defendant's CEO and was the decision maker with regard to Plaintiff's termination.[12]

Coming directly to the point, the Court finds that the evidence simply does not support Plaintiff's position that the e-mails sent by her on October 10, 2002 were received by either Zitting or Chapman prior to Defendant's decision to fire Plaintiff. The issue of the timing of the decision to terminate Plaintiff is established by the testimony and e-mail of witness Scott Peterson. Peterson is not a party to this case. He was a disinterested witness. Both the testimonial and documentary evidence in the record establishes that Zitting told Peterson sometime in the morning or afternoon on October 10, 2002 – *before* Plaintiff sent her e-mail at 5:43 p.m. – that he had decided to terminate Plaintiff.[13] Peterson testified that he spoke with Zitting in the morning of October 10, 2002,[14] that Zitting told Peterson he believed Plaintiff had walked out and quit on October 9, 2002, that Peterson would be taking over Plaintiff's position,

---

[11] *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000); Jury Instruction No. 20 (Docket No. 185).

[12] Transcript at 278.

[13] *Id.* at 389-391, Trial Exhibit X; *See also* Transcript at 278, 336-337.

[14] *Id.* at 389.

and that even if Plaintiff returned October 11, 2002, Zitting was going to fire her.[15] Peterson's testimony is supported by Zitting's testimony.[16]

Aside from Plaintiff's counsel's own argument, Plaintiff presented no evidence to counter Peterson's testimony.

As such, the Court finds that Plaintiff's October 10, 2002 e-mails were *not* received prior to the making of the decision and, as such, are not relevant to Plaintiff's *prima facie* case.

The Court will briefly address Plaintiff's arguments rebutting this conclusion. Despite the repeated assertions of Plaintiff's counsel that Zitting testified that his receipt of Plaintiff's e-mail was the "straw that broke the camel's back," the Court notes that such a statement mischaracterizes the testimony. Zitting testified that he had made his decision to terminate Plaintiff earlier, and that his receipt of the e-mail only confirmed his decision.[17] Further, the Court does not believe that any reasonable jury could find that Plaintiff's counsel's argument that the conciliatory tone of Chapman's e-mail to Plaintiff, sent October 9, 2002, at 5:59 p.m.,[18] prior to the decision by Zitting to terminate Plaintiff, is evidence in Plaintiff's *prima facie* case. Finally, no reasonable jury could find that Plaintiff's counsel's argument that the East Coast time stamp somehow creates an issue with regard to the timing of when Plaintiff's e-mail was sent to Zitting. Plaintiff put forth no evidence whatsoever challenging the accuracy of the transmission

---

[15] *Id.* at 391; Trial Exhibit X.

[16] *Id.* at 374 (Zitting testified that "I believe I spoke to [Peterson] in the morning.").

[17] *Id.* at 265-66; 330-335.

[18] Trial Exhibit H.

time reflected in the time stamp in the heading of the subject e-mail, other than argument of counsel. Plaintiff's own testimony is that she sent the e-mail at 5:43 p.m., and believed the time stamp to be accurate.[19]

Having found that Plaintiff's October 10, 2002, e-mails are not relevant and, therefore, not to be considered by either the jury or the Court, the only potentially "protected activity" by Plaintiff is the single conversation in July or August 2002 between Plaintiff and Zitting. In that conversation, the evidence is that Plaintiff allegedly complained to Zitting against Chapman for various reasons, but the only items which could arguably be considered to touch upon gender were that Chapman would look at her chest area a lot, and asked her to button *up* her blouse.[20] The testimony and evidence presented to the jury make it clear that Plaintiff was generally unhappy with Chapman, which amounted to a personal grievance against him, or a vague complaint, rather than a valid basis for a retaliation claim.[21] Further, Zitting testified that at the close of that conversation, he asked Plaintiff whether she wanted him to talk to Chapman, to which Plaintiff responded, "no, no, no. I can handle Steve Chapman. It's not an issue."[22]

Such a single, vague conversation simply cannot rise to the level of a complaint of discrimination, as a matter of law. Finally, the Court finds that the proximity in time between the

---

[19] Transcript at 99-100.

[20] *Id.* at 89-90, 178-180.

[21] *See Clark County School District*, 532 U.S. 268 (2001).

[22] Transcript at 347.

July/August 2002 conversation and Plaintiff's October 11, 2002, termination is insufficient to meet the third prong of the retaliation analysis.

The Court finds that a reasonable jury could not find that the single conversation at issue between Plaintiff and Zitting rose to the level of a protected activity which would give rise to a retaliation claim. The evidence before the jury "points but one way," and Plaintiff has failed, as a matter of law, to meet her burden of establishing the elements of retaliation. As such, the Court need not discuss the issues raised by the parties regarding legitimate, non-discriminatory reasons for the firing, or the allegedly pretextual nature thereof. Plaintiff's *prima facie* case fails, and judgment as a matter of law must issue against Plaintiff.

The Court will vacate the jury's verdict against Defendant on the retaliation claim. However, as the jury's verdict on Defendant's counterclaim against Plaintiff remains unchallenged, the verdict remains in force as to the breach of contract claim.

IV.   CONCLUSION

Based upon the above, it is hereby

ORDERED that Defendant's Rule 50 Motion for Judgment Notwithstanding the Verdict (Docket No. 199) is GRANTED. It is further

ORDERED that the Jury Verdict entered in this case on November 4, 2005, as it relates to the retaliation claim, is VACATED. The Jury Verdict remains in force as it relates to Defendant's counterclaim against Plaintiff. It is further

ORDERED that Plaintiff's Motion for Attorney Fees (Docket No. 196) is MOOT.

The Clerk of Court is directed to enter judgment in favor of Defendant and against Plaintiff on all counts and in favor of Defendant and against Plaintiff on Defendant's counterclaim, in the amount of $2,375.84.

SO ORDERED.

DATED this 18th day of January, 2006.

                          BY THE COURT:

                          _____
                          TED STEWART
                          United States District Judge