IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| YVONNE FLITTON,<br><br>        Plaintiff,<br><br>vs.<br><br>PRIMARY RESIDENTIAL MORTGAGE, INC.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:03CV481DAK |

      This matter is before the court on several pre-trial motions: Defendant's Motion to Reschedule or Take Off Calendar the November 18, 2008 Bench Trial; Defendant's Motion to Strike November 2008 Trial Date and for Entry of Judgment Barring Recovery of Back Pay or Front Pay as a Matter of Law; Defendant's Objections to Plaintiff's Proposed Trial Exhibits; and Plaintiff's Motion in Limine. The court concludes that a hearing is not necessary in deciding these matters. Based on the memoranda submitted by the parties and the facts and law relevant to these motions, the court enters the following Memorandum Decision and Order.

**Defendant's Motion to Reschedule Trial**

    Defendant asks the court to reschedule the trial in this matter because it's motion to strike the trial date raises legal issues that Defendant believes should be decided prior to the parties preparing for trial. While the court typically prefers that legal motions be briefed and decided before parties go to the expense of preparing for trial, Defendant brought its motion to strike the trial only one month before the trial. Defendant did not provide any explanation for its late

filing. In fact, the legal issues raised in the motion are based on a 1989 Supreme Court case and 1991 Amendments to the Civil Rights Act. These issues have been available to Defendant since the conclusion of the second jury trial in this matter. The court concludes that Defendant's motion to strike the trial does not provide a basis for moving the trial date. Accordingly, the court denies Defendant's Motion to Reschedule or Take Off Calendar the November 18, 2008 Bench Trial.

### Defendant's Motion to Strike Trial and for Entry of Judgment

Defendant asks this court to strike the bench trial on front and back pay damages and to enter judgment as a matter of law that Plaintiff is not entitled to such damages. Defendant asserts that the two jury trial verdicts in this case establish that the case is a mixed-motive case. Specifically, in the first jury trial, the jury found on Plaintiff's retaliation claim, that Defendant took adverse employment action against Plaintiff because she engaged in protected opposition to discrimination. In the second jury trial, however, the jury found on Plaintiff's gender discrimination claim that Defendant did not intentionally discriminate against Plaintiff on the basis of her gender when her compensation was reduced or when she was terminated. In addition, the second jury found that Plaintiff was not entitled to punitive damages on either her retaliation or gender discrimination claims.

Defendant contends that when the court examines both jury verdicts with equal weight, the court must conclude that Plaintiff's termination was motivated by both improper and legitimate, nondiscriminatory reasons. This conclusion, according to Defendant, establishes a mixed-motive case to which *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) and the 1991 Amendments to the Civil Rights Act apply. The court does not agree. Defendants liability on

2

the retaliation claim was established by the jury verdict in the first trial. The court presiding over the first trial instructed the jury on the *Price Waterhouse* defense, and the jury rejected it. The jury verdict in the second trial on gender discrimination and punitive damages involved separate claims and did not affect, alter, or call into question Defendant's liability on the retaliation claim. In attempting to claim that the second jury verdict created a mixed-motive case, Defendant reads far too much into the second jury's findings. The second jury did not find that there was a legitimate motive behind Plaintiff's firing. The second jury found only that Defendant did not intentionally discriminate against Plaintiff on the basis of her gender. There is no reason for the court to speculate as to whether the jury thought Plaintiff was terminated for a legitimate reason or as a result of retaliation. The second jury was aware of the prior verdict on retaliation and could have as easily agreed with the first jury as it could have concluded that there was some legitimate reason for Plaintiff's termination. In either event, the second jury was dealing only with the gender discrimination claim. Just as the first jury's verdict on the retaliation claim had no affect on the second jury's consideration of the gender discrimination claim, the second jury's verdict on the gender discrimination claim has no affect on the first jury's verdict on the retaliation claim. The claims are separate claims and liability is established for each claim independently. A mixed verdict on separate claims does not create a mixed-motive case.

Because Plaintiff has established Defendant's liability on the retaliation claim, Plaintiff's damages are not limited by 42 U.S.C. § 2000e-5(g)(2)(b). That provision applies where "a respondent demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor." The first jury's verdict rejected that Defendant had made such

a showing. In addition, Defendant's claim that the second jury made this finding is based only on speculation. As asserted by Plaintiff, the remedies available to her on her retaliation claim are found in 42 U.S.C. §2000e-5(g)(1). Section 2000e-5(g)(1) applies when the court, in this case a jury, finds that the Defendant has engaged in an "unlawful employment practice." Retaliation is a unlawful employment practice under Title VII. *Id.* §2000e-3[a]. Plaintiff, therefore, is entitled to a bench trial to determine appropriate back pay or front pay. Accordingly, the court denies Defendant's motion to strike the trial.

### Defendant's Objections to Plaintiff's Proposed Trial Exhibits

Defendant objects to all of the trial exhibits listed in Plaintiff's October 17, 2008 Final Pretrial Disclosures and in her November 3, 2008 Amended Pretrial Disclosures. Plaintiff's Amended Pretrial Disclosures added nine proposed exhibits that Plaintiff may use at the trial.

*a. Timeliness*

As an initial matter, Defendant objects to Plaintiff's Amended Pretrial Disclosure as untimely. Plaintiff states that she inadvertently left these documents off of the first Final Pretrial Disclosures and has since provided Defendant with a copy of all exhibits. Plaintiff made the amended disclosures two weeks after the deadline, but still two weeks before the trial. Plaintiff's first exhibit list consisted of eleven documents, and her amended list added nine more. Given the relatively few documents listed as potential exhibits and the disclosure two weeks before trial, the court finds no prejudice to Defendant. Therefore, the court declines to reject the exhibits first listed on Plaintiff's amended disclosures as untimely.

*b. Objections to Expert Reports*

Defendant makes similar objections for each of expert reports on Plaintiff's exhibit list: Defendant claims that the reports lack foundation and authenticity, are impermissible hearsay, and that much of the analysis and conclusions are not that of the expert. The court refuses to rule on foundation and authenticity prior to trial. Defendant has not argued specific allegations that would form the basis for these objections as a pretrial matter. Plaintiff is typically given the opportunity to authenticate and lay a proper foundation for reports at trial, and the court finds no grounds for requiring such authentication or foundation to be made prior to trial.

As to Defendant's hearsay objections to the reports, the general rule is that the strict hearsay rule does not necessarily apply to expert testimony. *Grain Dealers Mut. Ins. Co. v. Farmers Union Co-op. Elevator & Shipping Ass'n*, 377 F.2d 672, 679 (10th Cir. 1967). In addition, experts may rely on hearsay evidence in forming their opinions. *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1309 (5th Cir. 1991).

Furthermore, Defendant's objection that the experts' analyses and conclusions are not their own can be raised on cross examination. The experts have signed the report and claimed that the opinion is their own. Defendant has the opportunity at trial to demonstrate weaknesses in the expert's analysis. If the analysis is, in fact, not the analysis of the expert, Defendant can establish that at trial.

*c. Objections on foundation, authenticity, and lack of production*

With respect to all of the remaining exhibits, Defendant contends that the exhibits lack foundation and authenticity and they were not produced to Defendant. Plaintiff asserts that

Defendant has been provided with a copy of all exhibits that Plaintiff will or may use during the upcoming trial.  Without more specifics regarding the exhibits production, there is no basis for the court to know which party is correct on the issue.   The court notes that several of the exhibits are publicly available on the internet and some of the articles were identified in Plaintiff's expert reports.  The court, however, finds that it was Defendant's burden to demonstrate that the exhibits had not been produced and it failed to provide specific facts demonstrating that the exhibits were not produced and that it was prejudiced in some manner as a result.

Defendant further objects to several of the remaining exhibits on the grounds of foundation and authenticity.  On their face, the exhibits are business records, information from websites that are publicly available, and articles relied upon by Plaintiff's experts.  The court finds that Defendant has not raised any serious questions about the remaining documents' reliability that would preclude Plaintiff from having the opportunity to authenticate and lay a foundation for the documents at trial.

Finally, Defendant objects to several of the exhibits containing information obtained on the internet as hearsay.  The exhibits include compilations of salary, bonus, and benefits paid or provided to mortgage executives in this area, and articles relied upon by Plaintiff's experts regarding the housing market and related industry.  The compilations appear to fall under Federal Rule of Evidence 803(17)'s exclusion from the hearsay rule of "[m]arket quotations, tabulations, lists, directories, or other published compilations, generally used and relied upon by the public or by persons in particular occupations."  A note to the rule states that "[t]he basis of trustworthiness is general reliance by the public or by a particular segment of it, and the

motivation of the compiler to foster reliance by being accurate." The court agrees with Plaintiff, that in today's internet age, sites such as Salary.com, provide information to the public with the motivation to foster reliance by being accurate. Moreover, Defendant will have ample opportunity to question the accuracy of the information at trial.

As to the articles relied on by Plaintiff's experts, it is well accepted that experts can and do rely on hearsay. *First Nt'l Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996). Defendant can question the experts regarding their use of the articles in their analyses, but the court need not strike the articles as hearsay.

### **Plaintiff's Motion in Limine**

Plaintiff moves the court for an order preventing Defendant from introducing evidence that Defendant claims to have discovered post-termination that would have justified Plaintiff's termination. This motion arises because Defendant's expert stated in his expert report that he had been instructed to make the assumption that by December 15, 2002, Defendant had discovered information of poor performance or mismanagement by Plaintiff that would have independently justified Flitton's termination. Defendant acknowledges that the expert was instructed to make the assumption and states that the post-termination evidence consists of documents regarding Flitton's performance and the performance of the Wholesale Division as a whole during her watch.

Plaintiff argues that Defendant has refused to identify the information or produce it to Plaintiff. Although Defendant's response to Plaintiff regarding the December 15, 2002 cutoff for damages appears to assert that the information justifying Plaintiff's termination as of that date is

contained in documents, Defendant does not direct the court or counsel to those documents.

Defendant states that in its Answer it asserted affirmative defenses alleging that Plaintiff's damages may be barred by the after-acquired evidence doctrine and that Plaintiff's claims are barred, in whole or in part, because Plaintiff did not adequately perform her job responsibilities. Nonetheless, the only relevant affirmative defense to the upcoming trial on front and back pay is the after-acquired evidence defense. Post-termination evidence is relevant to the present bench trial on front and back pay only with respect to the appropriate level of damages. Although Defendant attempts to assert that the evidence also relates to its affirmative defense that Plaintiff's claims are barred as a result of her inadequate performance, that affirmative defense relates to establishing liability on the claims and is wholly irrelevant to the issue of damages. As stated above, liability on the retaliation claim was established by the first jury, and Defendant may not present evidence at the bench trial on damages for the purpose of trying to undermine the jury verdict on liability.

With respect to Defendant's after-acquired evidence affirmative defense, in *McKennon v. Nashville Banner Publishing Co.*, 513 US. 352 (1995), the Supreme Court held that evidence of employee misconduct occurring during the employee's tenure with the employer but not discovered by the employer until after the employee's termination may be used to limit relief if the employer can demonstrate that the prior conduct was so severe that it would have discharged the employee on those grounds alone. *Id.* at 362. In *McKennon*, the Court addressed the after-acquired evidence doctrine in an ADEA case where liability was assumed and the only question was what evidence was relevant to consider in determining the appropriate damages.

The *McKennon* Court recognized that the ADEA and Title VII do "not constrain employers from exercising significant other prerogatives and discretions in the course of the hiring, promoting, and discharging of their employees." *Id.* at 361. Accordingly, "[i]n determining appropriate remedial action, the employee's wrongdoing becomes relevant not to punish the employee, or out of concern 'for the relative moral worth of the parties,' but to take due account of the lawful prerogatives of the employer in the usual course of its business and the corresponding equities that it has arising from the employee's wrongdoing." *Id.* The court further recognized, however, that the doctrine needed to be developed and refined by the courts on a case-by-case basis: "The proper boundaries of remedial relief in the general class of cases where, after termination, it is discovered that the employee has engaged in wrongdoing must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case." *Id.*

Factually in *McKennon*, the Court addressed serious misconduct revealed in a deposition. The plaintiff testified that she had copied several confidential financial documents as secretary to the employer's comptroller and took the documents home for insurance and protection against being fired. *Id.* at 355. A few days after the plaintiff disclosed that information, the defendant notified her that such conduct had been in violation of her job responsibilities and that had it known of her misconduct, it would have discharged her at once for that reason. *Id.* Neither the district court nor the court of appeals contested the employer's statement that such conduct would have resulted in immediate termination, and the Supreme Court premised its opinion on the fact that the misconduct "was so grave that [the plaintiff's] immediate discharge would have

followed its disclosure in any event." *Id.* at 356.

The *McKennon* court concluded by holding that "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Id.* at 362-63. The court also recognized that "[t]he concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims under the Act is not an insubstantial one, but we think the authority of the courts to award attorney's fees . . . and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses." *Id.* at 363.

Specifically with respect to front pay, the *McKennon* Court found that the facts in that case precluded reinstatement or front pay as an appropriate equitable remedy because it "would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds." *Id.* at 362.

As to back pay, the Court stated that the resolution of the proper measure of back pay "must give proper recognition to the fact that a[] [statutory] violation has occurred which must be deterred and compensated without undue infringement upon the employer's rights and prerogatives." *Id.* at 362. "The object of compensation is to restore the employee to the position he or she would have been in absent the discrimination." *Id.* As guidance, the court stated that "[t]he beginning point in the trial court's formulation of a remedy should be calculation of backpay from the date of the unlawful discharge to the date the new information was discovered.

In determining the appropriate order for relief, the court can consider taking into further account extraordinary equitable circumstances that affect the legitimate interests of either party." *Id.*

In this case, Defendant appears to take the position that it is entitled to make an assumption as to the date it felt justified in terminating Plaintiff without attempting to establish that it has evidence to justify its assumption. Defendant has not specifically identified any exhibits listed on its pretrial disclosures for this trial that would meet the *McKennon* standard for admittance of after-acquired evidence. Rather, Defendant argues that it is not required to walk Plaintiff through its entire case. Defendant also states that it is entitled to introduce documents and call witnesses who have been identified for years. Such a statement, however, begs the question of why those documents cannot be specifically identified to the court for purposes of deciding this motion and for purposes of allowing the court to determine whether the after-acquired evidence doctrine applies in the court's calculation of front and back pay.

Defendant seems to claim that because Plaintiff chose not to do any discovery on Defendant's affirmative defenses, it is not required to identify the evidence it has supporting that defense. A lack of discovery on the defense, however, does not excuse a party from specifically identifying the exhibits supporting the defense in its pretrial disclosures. If Defendant has in fact identified exhibits in its pretrial disclosures that it intends to use to support is affirmative defense at the bench trial, it should have identified those exhibits to the court in response to Plaintiff's motion. The court has never ruled on a motion in limine to exclude evidence that a party refuses to identify even to the court.

Defendant referred to the evidence it seeks to introduce as post-termination evidence

"regarding Flitton's performance and the performance of the Wholesale Division during her watch."  Defendant states that both Judge Stewart and this court dealt with post-termination information in relation to motions in limine before both jury trials.  But the motions in limine before the jury trials were brought by Defendant and did not relate to evidence that would justify Plaintiff's termination.  Before Judge Stewart's jury trial, Defendant successfully precluded the introduction of non-performing loan files on the basis that the only evidence relevant to liability was evidence known by Defendant's employees as of the date of termination.  And, before this court's jury trial, Defendant sought to preclude post-termination evidence because Plaintiff intended to use the evidence to demonstrate that she was qualified for the position, that Defendant's stated reasons for her termination were pretextual, and that she was treated differently than a similarly-situated male employee who replaced her.  The court ruled that Plaintiff had already demonstrated that she was qualified and allowed the evidence to the extent that it related to pretext.  The specific evidence regarding pretext, however, related to Defendant's alleged restatement of the profit and loss statements for the Wholesale Division after Plaintiff's termination.  The Tenth Circuit had indicated that such evidence, if it did occur post-termination, could relate to whether Defendant was attempting to change its financial records after the fact to justify Plaintiff's termination.  Such evidence is completely opposite of the type of evidence addressed in *McKennon*.  The evidence in *McKennon* related to the employee's alleged misconduct.  Therefore, despite Defendant's claims that the evidence has been identified for years, the court cannot find anything in the record about evidence acquired by Defendant post-termination that would have justified Plaintiff's termination.

In attempting to analyze whether post-termination evidence should be excluded, the court has before it only Defendant's statement that the evidence relates to Flitton's performance and the performance of the Wholesale Division during her tenure. These vague statements do not reach the standard set forth in *McKennon*. The *McKennon* Court stated that if the employer seeks to rely on after-acquired evidence, "it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone." *Id.* at 362-63. The statement by Defendant in this case does not even suggest "wrongdoing" let alone severe wrongdoing. Accordingly, to Defendant it only relates to performance. It is difficult to imagine that Defendant was not aware of Plaintiff's performance or the performance of her division during the time of her employment.

Interestingly, Defendant does not even argue that it has a burden to establish that the after-acquired evidence is admissible or that it intends to establish its burden at trial. Defendant's opposition did not rely on a single case or other authority. If Defendant intended to introduce at trial evidence of severe wrongdoing that would have resulted in termination if Defendant had been aware of such conduct, Defendant should have identified the exhibits in its pretrial disclosures. To the extent that Defendant intended to introduce post-termination evidence of Plaintiff's performance or the performance of the Wholesale Division without identifying those documents on its final pretrial disclosures, the court will not allow such evidence to be introduced.

However, it remains unclear as to whether Defendant has listed exhibits and witnesses intended to present evidence in support of its after-acquired evidence defense. Given that

Defendant has pleaded such a defense and to the extent that it has identified exhibits or witnesses intended to support the defense, the court does not believe it can or should exclude such evidence. The evidence must, however, reach the standards expressed in *McKennon* or it will not be allowed.

The court notes that it is troubled by Defendant's response to this motion in limine. However unintentional, the tone of Defendant's response seems to imply that it is entitled to ambush its opposition at trial. The court understands that Defendant was under shortened time constraints in preparing its response. But, the court cautions Defendant from any further obfuscation of the evidence or its intentions with respect to evidence in its submission to and conduct before the court.

## CONCLUSION

Based on the above reasoning, Defendant's Motion to Reschedule or Take Off Calendar the November 18, 2008 Bench Trial is DENIED; Defendant's Motion to Strike November 2008 Trial Date and for Entry of Judgment Barring Recovery of Back Pay or Front Pay as a Matter of Law is DENIED; Defendant's Objections to Plaintiff's Proposed Trial Exhibits are DENIED in part and DEFERRED UNTIL TRIAL in part; and Plaintiff's Motion in Limine is GRANTED IN PART AND DENIED IN PART as discussed above.

DATED this 13th day of November, 2008.

BY THE COURT:

*/s/ Dale A. Kimball*
DALE A. KIMBALL
United States District Judge