IN THE UNITED STATES DISTRICT COURT DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| YVONNE FLITTON,<br><br>      Plaintiff,<br>vs.<br><br>PRIMARY RESIDENTIAL MORTGAGE, INC.<br><br>      Defendant. | MEMORANDUM DECISION AND ORDER AWARDING ATTORNEYS' FEES<br><br>2:03CV481DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Plaintiff's Motion for Attorneys' Fees under Federal Rule of Civil Procedure 54(d)(2) and 42 U.S.C. § 2000e-5(k). The court does not believe that a hearing will significantly aid in its determination of this motion. The court, therefore, renders the following Memorandum Decision and Order based on the materials submitted by the parties.

## DISCUSSION

Plaintiff seeks $669,102.00 in attorneys' fees for all litigation and appellate work to date because she prevailed on her retaliation claim against Defendant. Under 42 U.S.C. § 2000e-5(k), a court "may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." In this action, a jury awarded Plaintiff $50,000 on her retaliation claim and this court awarded Plaintiff $304,703.50 in back pay as a result of the jury's finding of retaliation. Although Plaintiff had some claims dismissed on summary judgment and did not prevail on her gender discrimination claim, her favorable verdict on the retaliation claim renders

her a prevailing party under Section 2000e-5(k).  *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (holding that party may be deemed prevailing party if she succeeds on any "significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."). Defendant does not contest that Plaintiff is a prevailing party.  Defendant, however, asserts that the fact that Plaintiff is a prevailing party does not mean that she is presumptively entitled to all the fees she seeks in her fee application.

An applicant seeking fees pursuant to 42 U.S.C. § 2000e-5(k) has the burden of establishing that both the claimed rate and the number of hours are reasonable.  *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).  To determine a reasonable fee, the court must first calculate the "lodestar," which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1493 (10th Cir. 1994).

**A.  Reasonable Hourly Rate**

Defendant first takes issue with the hourly rates charged by Plaintiff's counsel.  In order to satisfy the burden of showing that the claimed rate is reasonable, a fee applicant must "produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

 In support of her attorneys' hourly rates, Plaintiff's lead counsel submits an affidavit stating that the rates for each of the attorneys is reasonable.  Plaintiff also relies on the Laffey Matrix, which establishes rates for attorneys and paralegals under fee-shifting statutes, such as 42

U.S.C. § 2000e-5(k), based on the number of years since graduation from law school. *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983).

The Laffey Matrix is frequently used to determine presumptively reasonable fees in Washington D.C. Although the matrix can be adjusted for different regions, courts in other districts have found that the Laffey Matrix, even with such adjustments, is not "more helpful than the rates actually used by other courts or the rates of law firms." *See, e.g., Fitzgerald v. City of Los Angeles*, 2009 WL 960825 (C. D. Cal. 2009).

In *Robinson v. Equifax Information Services, LLC,* 560 F.3d 235 (4th Cir. 2009), the Fourth Circuit determined that the district court abused its discretion in awarding the hourly rates requested by the plaintiff's counsel based only on affidavits from her own counsel and the Laffey Matrix. *Id.* at 245. The court stated that there was an "absence of 'satisfactory specific evidence of the prevailing market rates.'" *Id.* The court explained that "[e]xamples of the type of specific evidence that we have held is sufficient to verify the prevailing market rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community." *Id.*

In this case, Plaintiff requests the following hourly rates: Blake Atkin $450; Brennan Moss $150-175; William O. Kimball $175-200; Joseph H. Pugsley $150; John V. Mayer $175; paralegals and law clerks $90-125. Plaintiff claims that a Laffey Matrix adjusted for Salt Lake would allegedly place lead attorney Blake Atkin's hourly rate at $574-$671 during the years of litigation. The other attorneys who worked on her case similarly charged lower rates than her adjusted Laffey Matrix would have set. Plaintiff argues that her requested rates are reasonable because they are lower than the adjusted Laffey Matrix.

Defendant, however, has submitted the affidavit of its lead counsel, Darryl Lee, regarding his hourly rate. Mr. Lee's affidavit also includes as exhibits ten affidavits from local attorneys that have been filed with this district court in similar matters during the last two years. Mr. Lee, who has three years more experience than Mr. Atkin, charged hourly rates of $190 to $215 during the course of this litigation. The affidavits of other counsel with similar experience demonstrate that the hourly rates for similar work range from $185 to $250. This range is also supported by affidavits submitted in connection with Plaintiff's reply memorandum attached to the Declaration of John Mayer.

Defendant's affidavits are in stark contrast to Plaintiff's adjusted Laffey Matrix rates of $574-$671 and Mr. Atkin's requested rate of $450. The court finds Defendant's evidence more credible as to the prevailing market rates for attorneys with similar experience in similar types of cases. Few, if any, attorneys in Salt Lake City charged between above $500 per hour for the years 2004 to 2009. Plaintiff's attempt to adjust the Laffey Matrix has provided hourly rates that are not supported by the rates commonly charged in this community.

The court concludes that most of Plaintiff's requested hourly rates must be lowered to be in line with prevailing market rates for similarly experienced attorneys litigating similar types of cases. The court adjusts the hourly rates as follows: Blake Atkin $215; Brandon Moss $150; William Kimball $175; Joseph Puglsey $150; and John Mayer $150. The court finds that Scott Pierce's hourly rate of $135 is reasonable given his years of experience but unique circumstances.

Plaintiff also seeks fees for work done by non-lawyers and paralegals. Paralegal fees are recoverable as part of an attorney fee award only "to the extent the paralegal performs work

traditionally done by an attorney." *See Allen v. United States Steel Corp.*, 665 F.3d 689, 697 (5th Cir. 1982). Defendant takes issue with Plaintiff's failure to identify these individuals' positions and failure to explain the nature of the work performed by these individuals. In the declaration of John Mayer, Plaintiff identifies Tania Formigone and Lindsay Stott as paralegals, Kelly Ann Booth, Mark LaRocco, and Nathan Nelson as law clerks, and Saria Butler, Joseph Atkin, and Heidi Atkin as legal assistants.

Plaintiff, however, does not specifically address Defendant's challenge to the nature of the work performed by these individuals. The time entries from the legal assistants identify work including: "mailings," "brief prep," "assisting in prep for trial," brief finalization, copying, etc. The time entry descriptions themselves do not support a finding that this work was anything other than clerical work. Clerical work performed by legal assistants are the type of work that is typically paid from a firm's overhead, not billed to clients. Plaintiff is not entitled to fees for clerical work performed by legal assistants.

Some of the paralegal time entries similarly appear to include clerical work. To the extent that Plaintiff has not attempted to demonstrate that the work was work typically performed by an attorney, the court is excluding such fees. For example, two entries, totaling eight hours of work by one paralegal, are for preparing an argument folder. Such work would appear to be compiling copies of the relevant briefs and cited cases. Furthermore, determining what should be included as an exhibit is billable, but compiling exhibit binders is not. Plaintiff's paralegal's time entries related to preparing exhibit binders do not demonstrate that they are anything but clerical. Other paralegal entries include "prepared fed ex to court and opposing party" and "delivered package to fed ex." Without more explanation as to how the work could be

5

considered work typically performed by an attorney, the court is not awarding fees for the work.

There are time entries billed by paralegals that constitute time entries that would typically be billed to clients. These entries include certain trial preparations, trial attendance, and editing of motions and other submissions to the court. The court finds that these types of entries are billable and should be billed at the rate of $90 per hour.

All of the time entries for the individuals identified as law clerks demonstrate work typically performed by an attorney and billed to clients.[1] Therefore, there is no basis for striking those requested fees on the grounds that they are clerical. The court finds that the law clerks in this case should be billed at the following rates: Kelly Ann Booth $90; Nathan Nelson $90; and Mark LaRocco $90.

**B. Reasonable Hours of Work**

After determining the reasonable hourly rates, the court must determine whether counsel has exercised billing judgment with respect to the claimed number of hours worked. *See Ellis v. University of Kan. Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1998). Counsel must make a "good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude hours from his fee submission." *Hensley,* 461 U.S. at 434. The parties present several disagreements as to the reasonableness of Plaintiff's requested number of hours.

*1. Adjustments*

First, Defendant argues that there is no evidence that Plaintiff has exercised billing

---

[1] The court notes an exception for the hours in which Kelly Ann Booth attended the first jury trial. Although she attended the trial in the role of a paralegal, her hourly rate is already consistent with a paralegal rate. Therefore, no adjustment is necessary.

judgment because counsel has failed to show any instances in which they have made adjustments from the actual time expended. But the issue is whether the requested hours are reasonable. There is no requirement that Plaintiff demonstrate what number of hours were adjusted or cut.

> 2. *Appeal-related Fees*

Defendant next argues that Plaintiff is not entitled to attorney fees for its appeal because Plaintiff never requested fees from the appellate court. The Tenth Circuit has recognized that "an application for appeal-related attorneys' fees must first be made to our court. Should we decide that it is appropriate to award such fees, we may then remand to the district court to determine an award of reasonable fees." *Hoyt v. Robson Cos.*, 11 F.3d 983, 985 (10th Cir. 1993). In *Hoyt*, the district court denied the plaintiff's request for appeal-related fees for lack of jurisdiction because the plaintiff failed to ask the appeals court for those fees. *Id.* The Tenth Circuit affirmed the district court's denial of fees. *Id.*

Plaintiff, however, argues that she is entitled to attorney fees for her appeal based on *Crumpacker v. Kansas Dept. of Human Resources*, 474 F.3d 747 (10th Cir. 2007). In *Crumpacker*, the Tenth Circuit distinguished *Hoyt* on the grounds that the case before it involved an interlocutory appeal. *Id.* at 756. The court recognized that the plaintiff could not have asked the appellate court for fees at the time of the interlocutory appeal because she was not yet a prevailing party as required under Title VII. *Id.* The *Crumpacker* court concluded that it was bound by the rule in *Hoyt*. *Id.* Accordingly, it held that "appeal-related fees, including those incurred in an interlocutory appeal, must generally be awarded by us." But, "[i]n drawing this conclusion," the court also held "that parties who prevail on interlocutory review in this court, and who subsequently become prevailing parties under Title VII . . . at the conclusion of the

merits proceedings, are implicitly entitled to reasonable attorneys' fees related to the interlocutory appeal." *Id.*

Although Plaintiff likens her appeal in this case to the interlocutory appeal in *Crumpacker*, her appeal was not an interlocutory appeal. Plaintiff's appeal occurred after a trial was held. Plaintiff appealed final rulings of the court on the merits. Her appeal to the Tenth Circuit was to reestablish that she was a prevailing party under Title VII based on the jury verdict. The Tenth Circuit reinstated the jury verdict. During that appeal, Plaintiff should have requested attorneys' fees. This case is more similar to *Hoyt* than it is to *Crumpacker*. This court, therefore, finds that it is bound by the holding of *Hoyt* and that it is without jurisdiction to award attorneys' fees related to Plaintiff's prior appeal. Therefore, the court denies Plaintiff's appeal-related fees, which total 424.10 hours.

      3. *Second Jury Trial*

Defendant further argues that Plaintiff should not be entitled to an award of attorney's fees for time expended on the second jury trial when Defendant prevailed on the remaining claims that were tried to the second jury. Plaintiff, however, is the prevailing party for the action as a whole. A party is deemed the prevailing party if it succeeds on any "significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

A failure to prevail on all claims does not mandate a reduction of attorneys' fees. In *Hensley*, the Court stated that there are two questions that must be asked: "First, did the plaintiff fail to prevail on claims that were unrelated to the claim on which [s]he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory

basis for making a fee award?" *Id.* at 434.  Claims that involve a "common core of facts" or "related legal theories" make it "difficult to divide the hours expended on a claim-by-claim basis." *Id.* at 435.  The Court stated that "[s]uch a lawsuit cannot be viewed as a series of discrete claims." *Id.*  Moreover, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his [or her] attorney's fee reduced simply because the district court did not adopt each contention raised."

In this case, Plaintiff's retaliation and discrimination claims were interrelated.  The second trial included a claim for punitive damages for both claims.  Even though Plaintiff was not successful at the second trial, she had already obtained substantial success from the first jury trial.  Moreover, the court agrees with Plaintiff that she should not be penalized for the necessity of relitigating claims that should have been resolved by the jury in the first trial.  The district court's erroneous rulings in connection with the first trial, which were based on arguments advanced by Defendant, necessitated the second trial.  Accordingly, the court concludes that Plaintiff is entitled to attorney's fees for the second trial.

    *4. Research*

Defendant also contends that Plaintiff's counsel failed to exercise billing judgment because the fee application includes hours spent on background research, as well as otherwise excessive research.  Defendant complains mainly about the research hours expended by the law clerks working for Plaintiff's counsel.   Plaintiff asserts, however, that her attorneys engaged only in the research necessary to pursue and prevail in this matter.  Plaintiff's counsel states that the law clerks provided valuable research and contributed to initial drafts of some pleadings.

Background research on a general area of law is generally not compensable under the fee-

shifting provision in Title VII.  *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1253 (10th Cir. 1998).  Charging "an adversary with time spent conducting basic background research is presumptively unreasonable."  *Id.*

After reviewing the research entries of Nathan N. Nelson, the court finds that the entries demonstrate excessive time for some of the research on generally basic and straightforward issues in the case.  The court, therefore, is cutting seven hours of time for Nathan Nelson.  The court does not find the research hours for Kelly Ann Booth to be excessive.  The parties, however, dispute whether Booth's attendance at trial was redundant.  Defendant argues that her presence was only for observation purposes.  But Plaintiff contends that she was the third person for Plaintiff's trial team and acted as a legal assistant.  The court, therefore, concludes that the time billed by Booth for trial attendance is reasonable.  These hours, however, should only be billed at a rate that a paralegal would typically charge.

     5. *Descriptions*

Defendant complains that Plaintiff's attorneys did not adequately describe the work performed.  Defendant claims that it is almost impossible for it or the court to examine the attorney's entries where there are large blocks of time billed for entries such as trial prep or reviewing issues.

"Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures."  *Hensley*, 461 U.S. at 437 n.2.  Billing records should reveal the time alloted to specific tasks-- "for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on."  *Cadena v. The Pacesetter Corp.,*, 224

F.3d 1203, 1216 (10th Cir. 2000).  The important thing is that "sufficient detail has been provided so that [the Court] can evaluate what the lawyers were doing and the reasonableness of the number of hours spent on those tasks." *Smith v. District of Columbia*, 466 F. Supp. 2d 151, 158 (D.D.C. 2006).

While the court does not believe that the entries of Plaintiff's counsel are ideal, it finds most of the entries adequately descriptive for purposes of reviewing the fee application.  For example, on entries that state merely "motion to compel," the court can assume that the time spent is for researching and drafting the motion.  Entries such as "trial prep" are vague, but obviously include many small tasks that are typically conducted in connection with preparing for trial.  The court does not believe there is a basis for discounting Plaintiff's requested fees as a result of these types of descriptions.

The court, however, is troubled by entries stating merely "research."  There are six entries by Mr. Pugsley that state only "research" or "legal research" and one by Lindsay Stott stating only "research."  Four more of Mr. Pugsley's entries state only "discovery research."  These entries are not specific enough for the court to conclude that the research was necessary in the case.  The entries are also on days when other attorneys were also listing time for legal research.  Because there is no description of the type of research being done, the court cannot conclude whether the research is duplicative of the other research occurring around the same time.  Moreover, as discussed above with respect to research conducted by law clerks, the failure to describe the type of research precludes the court from determining whether the research was merely for general background or disputed issues in the case.  Because of the lack of descriptiveness of these entries the court is cutting the 11.8 hours associated with these eleven

entries.

    6. *Excessive Work*

  Defendant also contends that Plaintiff's fee application unreasonably includes hours that are excessive, redundant, and unnecessary. Defendant claims that this is due, in part, to the number of attorneys representing Plaintiff. "Determining whether work is inherently duplicative is no easy task," because some duplication is "inherent in the process of litigating over time." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).

  The court agrees that there are some unnecessary work duplication in the time entries. For example, Mr. Pugsley attended the depositions of two experts even tough Mr. Atkin defended the depositions. Two attorneys are not necessary for defending a deposition. The court is deducting 4.7 hours of Mr. Pugsley's time attributed to the depositions. Another entry is for "an internal meeting to bring new attorney up to speed." This is also not the type of entry that should be billed. However, the court does not find an egregious amount of duplication in light of the fact that some duplication is inherent in litigating a case.

  Defendant argues that other hours are excessive for the work completed. For example, Defendant contends that Mr. Atkin recorded one hour a day for sixteen days with the same description: "response to motion in limine." The entries are unusual, but there were many motions in limine filed in connection with the first trial and the court is hesitant to second guess the work patterns of counsel. Defendant also questions Mr. Atkin's fourteen-hour entry for the last day of the second trial. Mr. Atkin billed fourteen hours for each day of the second trial. The last day of trial, however, began at 8:30 a.m., the case was submitted to the jury at 11:20 a.m., and the jury returned its verdict by 3:00 p.m. While counsel undoubtedly had preparation time

prior to the trial, the court agrees that it would be reasonable to reduce Mr. Atkins hours on the last day of trial by four hours. Finally, the court does not find it unreasonable for Mr. Atkin to bill more hours for a meeting with an expert than the expert bills. The entry could merely reflect Mr. Atkin's preparation time for the meeting as well. Accordingly, the court will not deduct for the discrepancy between the two individual's time entries.

### 7. Clerical Work

Defendant further argues that Plaintiff's counsel has billed for clerical work that would not typically be charged to a client. Defendant points to a 4.25 hour entry by Brandon Moss in which he states that the work performed consists of locating exhibits, organizing exhibits, and coordinating effort of putting books together.[2] The court agrees that such clerical work would not typically be billed. Accordingly, the court deducts 3.75 hours from Mr. Moss's time entry. The court will allow .5 of an hour to be billed because the entry states "locating exhibits." The court finds that he could not have reasonably delegated such a task to clerical staff.

### C. Appropriate Lodestar

Based on the above reasoning, the court calculates the following lodestar amount for this matter.

#### 1. Pre-Appeal Hours and Fees

| | | |
|---|---|---|
| Brandon Moss | 532 hours at $150.00 per hour = | $79,800.00 |
| Blake Atkin | 266 hours at $215.00 per hour = | $57,190.00 |
| Kelly Ann Booth | 142 hours at $90.00 per hour = | $12,780.00 |

---

[2] Defendant lists several other examples of clerical work, but such work is in connection with the appeal. The court has already determined that Plaintiff is not entitled to fees in connection with her appeal.

    Scott Pierce    153.5 hours at $135.00 per hour  =  $20,722.50

2. *Appeal-related fees are excluded as discussed above.*

3. *Post Appeal Hours and Fees*

| | | |
|---|---|---|
| Blake Atkin | 422.8 hours at $215.00 per hour = | $90,902.00 |
| Joseph Puglsey | 220.6 hours at $150.00 per hour = | $33,090.00 |
| William Kimball | 206.7 hours at $175.00 per hour = | $36,172.50 |
| John Mayer | 202.6 hours at $150 per hour = | $30,390.00 |
| Mark LaRocco | 13.5 hours at $90 per hour = | $1,215.00 |
| Nathan Nelson | 22 hours at $90 per hour = | $1,980.00 |
| Lindsay Stott | 38.3 hours @ $90.00 per hour = | $3,447.00 |

Therefore, the court finds a total lodestar amount of $367,689.00. The court finds this fee award to be a reasonable given the circumstances presented in this case. Few cases require three trials, and trial work is far more time intensive than motion practice. The case also involved a significant number of motions. Accordingly, the fee award is higher than the court has typically awarded in Title VII cases, but it is in accord with the amount of work reasonably performed in the case.

Defendant argues that the court should adjust the lodestar amount based on Plaintiff's degree of overall success. The court has already addressed this issue in connection with Plaintiff's entitlement to fees relating to the second trial. With respect to the case as a whole, the court does not agree that Plaintiff had only limited success. Plaintiff's claims were interrelated and the juries appropriately concluded that the case involved improper retaliation. Furthermore, the court does not find that it would be appropriate to factor into its calculation Plaintiff's request

for an extraordinary amount of front and back pay damages. The court found that Plaintiff was entitled to back pay and she obtained a substantial amount of damages. The court, therefore, concludes that no adjustment to the lodestar amount is necessary.

## CONCLUSION

Based on the above reasoning, Plaintiff's Motion to Attorneys' Fees is GRANTED. The court awards Plaintiff $367,689.00 in attorneys' fees.

DATED this 7th day of May, 2009.

_____
Dale A. Kimball,
United States District Judge